DICKINSON, Presiding Justice,
dissenting:
¶ 51. I fully join Justice Kitchens’s well-reasoned dissent which correctly finds that, under our currently existing Atkins standards, the trial court erred by finding that Sherwood Brown is not intellectually disabled and exempt from execution. I write separately to express grave concern about whether, under our current Atkins standards, courts can fairly determine which offenders are constitutionally exempt from the death penalty.
¶ 52. In Atkins, the United States Supreme Court expressed very specific concerns about executing persons whose mental capacities are reduced to the extent that they present significant risks particular to the judiciary.[3] Such concerns include the risk of “false confessions;” a lesser ability on the part of the offender to “make a persuasive showing of mitigation in the face of the prosecutorial evidence of *900 one or more aggravating factors;” reduced ability to “give meaningful assistance to their counsel;” and reduced ability to make good witnesses because “their demeanor may create an unwarranted impression of lack of remorse for their crimes.”[4]
¶ 53. But rather than exempt from the death penalty persons whose reduced mental capacities are found by the jury to present these concerns, the Atkins Court simply exempted all persons who bear the mental health label “mentally retarded.”[5] This Court then followed the Supreme Court’s lead and adopted the mental health definition corresponding with that label, essentially leaving it to the mental health community to decide who does, and does not, qualify for execution under the Constitution.[6]
¶ 54. My concern is that the mental health community — which has no responsibility to address the Atkins Court’s constitutional concerns — continually changes the “mental retardation” label for reasons that bear no relationship to the Atkins Court’s concerns. This eliminates any confidence of a connection between the continually changing label and the Court’s actual concerns. This disconnect, for instance, would allow the mental health community-to increase drastically the threshold for mental retardation, rendering the label incapable of addressing the Court’s constitutional concerns. Further, not only do these definitions change over time, but so too has the label, from mental retardation to intellectual disability.[7]
¶ 55. My concern takes into account the fact that the mental health community recognizes at least two different definitions of intellectual disability; one produced by the American Association on Mental Retardation (AAMR), and another produced by the American Psychiatric Association (APA). The Atkins opinion — handed down in 2002 — quoted the AAMR’s 1992 definition of “mental retardation,”[8] presumably without knowing that the AAMR would, that very same year (2002), adopt a new definition.[9] The Atkins Court also quoted from the APA’s fourth edition of its Diagnostic and Statistical Manual of Mental Disorders (DSM), produced in 2000.[10] The DSM’s fifth edition, which contains still another new and different definition of intellectual disability, was released in 2013.[11] What is more, given the fact that these mental health standards change over time, this Court’s decision to adopt the definition that existed in one snapshot in time— ignoring its perpetual change — made the definition from what was one of many definitions.
¶ 56. It seems to me that — rather than exempting from the death penalty all persons who bear the label “mentally retarded” as that label existed when we decided Chase or as continually defined, changed, and amended by persons who bear no duty or responsibility to meet the judiciary’s constitutional concerns — we should consid *901 er a judicial definition of intellectual disability that directly addresses the constitutional concerns expressed by the Atkins Court. This, I believe, is what the Atkins Court invited us to do when it stated:
Not all persons who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus. As was our approach in Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), with regard to insanity, “we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.” Id. at 399, 405, 416-417, 106 S.Ct. 2595.[12]
¶57. In implementing the Ford directive concerning insanity, the judiciary is unconcerned with the mental health community’s various definitions of insanity, substituting instead a judicial definition, commonly known as the M’Naghten Rule, that is designed to meet the concerns of the judiciary, rather than those of the mental health community.[13] Were we to do the same for intellectual disability, we would be assured that at least the correct question is considered.
KITCHENS AND KING, JJ., JOIN THIS OPINION.

. Atkins v. Virginia, 536 U.S. 304, 317-21, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).

. Id. at 318-21, 122 S.Ct. 2242.

. Id. at 321, 122 S.Ct. 2242.

. Chase v. State, 873 So.2d 1013, 1027-28 (Miss.2004).

. Hall v. Florida, - U.S. -, 134 S.Ct. 1986, 1990, 188 L.Ed.2d 1007 (2014).

. Atkins, 536 U.S. at 308 n. 3, 122 S.Ct. 2242 - (quoting Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed.1992)).

. Mental Retardation: Definition, Classification, and Systems of Supports (10th ed.2002).

. Atkins, 536 U.S. at 308 n. 3, 122 S.Ct. 2242 (quoting Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed.2000)).

. Diagnostic and Statistical Manual of Mental Disorders (5th ed.2013).

. Atkins, 536 U.S. at 317, 122 S.Ct. 2242.

. Roundtree v. State, 568 So.2d 1173, 1179 (Miss.1990).